MASSACHUSETTS BONDING & INSURANCE COMPANY, Appellee, v. JOSEPH J. NOVOTNY, Appellant.

**PARTIES: Intervention—Leave of Court and Notice Unnecessary.** The orderly procedure to effect intervention is (1) to obtain leave of court to intervene, and (2) to serve notice of such intervention on the adverse parties; *but neither of said steps is necessary.*

**PARTIES: Intervention—Failure to Fix Time for Answer.** Failure of the court to fix a time in which the original parties to an action should answer a petition of intervention becomes immaterial (1) when the cause was not tried until several terms had elapsed after intervener's petition was filed, and (2) when intervener's petition was really filed in vacation.

**REPLEVIN: Bond—Intervener As Injured Party.** A person who, in an action of replevin against his agent, intervenes for the purpose of protecting his right of possession in common with his agent, is an ''injured party,'' within the terms of the replevin bond.

Headnote 1: 31 Cyc. pp. 519, 521 (Anno.)  Headnote 2: 31 Cyc. p. 522 (Anno.)  Headnote 3: 34 Cyc. p. 1441.

*Appeal from Linn District Court.*—ATHERTON B. CLARK, Judge.

MARCH 10, 1925.

REHEARING DENIED JUNE 25, 1925.

ACTION in equity, to cancel a judgment obtained by the defendant against the plaintiff in a replevin action. The opinion states the facts. The trial court determined the equities of the cause to be with the plaintiff. Defendant appeals.—*Reversed.*

*George C. Claassen,* for appellant.

*Barnes, Chamberlain, Hanzlik & Thompson,* for appellee.

De Graff, J.—The relief sought by the plaintiff surety company is the cancellation of a judgment. Two issues are presented, either of which, if answered favorably to appellee, must result in an affirmance of the case. To understand the issues presently stated, it is necessary to outline the salient facts.

The appellant, Joseph J. Novotny, placed a Haynes automobile in storage in a garage in Cedar Rapids, Iowa. On March 20, 1920, his brother, William J., executed a bill of sale for the

1. Parties: intervention: leave of court and notice unnecessary. car to one Frank E Smith, and received therefor a note of $1,300, with interest, secured by a mortgage on a parcel of real estate. William J. Novotny was authorized, as agent of the appellant, to sell the car for cash only. Upon the discovery of certain misrepresentations relative to the value of the mortgaged land, William rescinded the contract of sale, secured the return of the car to storage, under attachment proceedings, and then instituted an action in the superior court of Cedar Rapids against Frank E. Smith, to rescind the sale on the ground of fraud. In this action Joseph J. intervened, alleging that he was the owner of the car and entitled to its possession. It was then learned that one Harry McFarlan claimed to have purchased the car from Smith, prior to the attachment proceedings, and he was brought in by interpleader. In the meantime, McFarlan instituted an action of replevin in the district court of Linn County, Iowa, against William J. Novotny and L. S. Morrison, marshal of the city of Cedar Rapids, who had obtained possession of the car under the attachment proceeding. On June 21, 1920, petition in replevin and bond, with appellee herein as surety, were filed, and McFarlan was given possession of the car. On August 31, 1920, William J. Novotny and L. S. Morrison filed motions in the replevin action for more specific statement, and to strike. On November 16, 1920, which was term time, Joseph J. Novotny filed a petition of intervention in this action; but no leave of court was given; no notice was served on the original parties to the suit, and no time fixed by the court within which answers should be filed.

On April 23, 1921, the action in the superior court resulted in a decree in favor of Joseph J. Novotny, the intervener.   On June 18, 1921, both motions of defendants in the replevin action were sustained, and plaintiff McFarlan was given ten days to amend his petition.   No amendment was ever filed.   On September 13, 1921, defendants obtained leave to amend their answer, and in their amendment referred to the petition of intervention.   On September 2, 1921, which was in vacation, Joseph J. Novotny filed an amended petition, which was in reality a complete petition of intervention.   No leave of court was secured, and no notice was served, although copies of the petition and the amendment were sent to the attorney who represented plaintiff McFarlan in the replevin action; but no pleadings were ever filed in response thereto.   Unable to get his client to appear and prosecute his case, counsel for McFarlan withdrew his appearance on September 21, 1921; and on September 22d, upon regular assignment, the case was called for trial.   The jury was waived, and the cause was tried to the court.   On the conclusion of testimony, the intervener elected to take the value of the property; and judgment was entered in his favor against McFarlan and the surety on his bond, plaintiff herein, for the sum of $1,500, with 6 per cent interest from June 20, 1920, and costs.   Thereafter, the instant action was instituted, to cancel the judgment on the grounds: (1) that the intervener failed to comply with the requirements of the statute governing intervention; and (2) that the bond did not run in intervener's favor.   Both issues present propositions of first impression in this court.

   I.   It is admitted that the intervener did not secure leave of court to file his petition; that he did not serve notice on the original parties; and that the trial court did not fix the time within which answers to the petition should be filed.   Were these steps necessary for a valid judgment under the statute?   The question is one of purely statutory interpretation.   The answer must be found in the express language of the provisions of the Code authorizing intervention; in the reasonable inferences that may be drawn from the language thereof; and in the very nature of the remedy itself.

Intervention is not a product of the natural growth of the English common law, but was introduced into our procedure from a foreign system. It was unknown to the early courts of both law and equity, but was in use to a certain extent in the ecclesiastical courts. 2 Chitty's Practice 492. However, it was a remedy familiar to the Roman civil law. From these sources it was introduced into the American jurisdictions, either by statute or by court decision. The Federal courts have permitted the innovation independently of statute, in both law and equity. Generally, the doctrine of equity was not broad enough to include this remedy, since parties afterwards brought in must not assert claims paramount to those of the original parties. See *Goldman v. Smith*, 93 Fed. 182; 21 C. J. 341; Elliot in 31 Am. L. Rev. 377. To a certain extent, the remedy has been developed independently of statutes in some state courts. See *Wightman v. Evanston Yaryan Co.*, 217 Ill. 371; *State v. Farmers State Bank*, 103 Neb. 194; *Gibson v. Ferrell*, 77 Kan. 454 (94 Pac. 783). For the most part, however, it has been introduced by statute, which defines the steps that must be followed in taking advantage of the remedy. See note, 123 Am. St. 281. Prior to the adoption of a statute in Texas (1879) authorizing intervention, it was held that the right of intervention rested upon the principle "that a party should be permitted to do that voluntarily which, if known, a court of equity would require to be done." *Pool v. Sanford*, 52 Tex. 621.

In Iowa, intervention is governed by statute; and, if a person attempts to take advantage of this remedy without bringing himself within the provisions of the statute, he is considered a mere "interloper," who acquires no rights by his unauthorized interference, unless there was a waiver of objections. *Henry, Lee & Co. v. Cass County Mill & Elev. Co.*, 42 Iowa 33; *First Nat. Bank of Leon v. Gill & Co.*, 50 Iowa 425; *Des Moines Ins. Co. v. Lent*, 75 Iowa 522. The statutory provisions in question material to our present inquiry are found in Sections 3594 and 3596, Code of 1897 (Sections 11174 and 11176, Code of 1924). The former section defines the interest necessary to invoke the remedy and the intervener's relation to the original parties in the suit. It reads:

"Any person who has an interest in the matter in litigation, in the success of either of the parties to the action, or against both, may become a party to an action between other persons, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendant in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the cause, and before the trial commences."

The latter section designates the procedure necessary, in that:

"The intervention shall be by petition, which must set forth the facts on which it rests, and all the pleadings therein shall be governed by the same principles and rules as obtain in other pleadings. But if such petition is filed during term, the court shall direct the time in which an answer shall be filed thereto."

It will be observed that no leave of court to the filing of the petition is mentioned, and that no notice to the original parties is expressly required by these sections. Is either or both of these steps within the intent of the legislature? The usual and orderly procedure in intervention is to first apply for and secure leave of court, and, after filing the petition, give notice to the original parties. These steps are quite generally provided for by statute. In *Ex parte Gray*, 157 Ala. 358, the court said:

"There seems to be some confusion in the minds of the profession as to the proper practice in cases of intervention. * * * It seems that the regular and orderly course of procedure is to file an application for leave to file a petition of intervention, of which the parties to the suit should have notice."

The Federal courts sometimes require an additional step when the matter of granting the application is discretionary. An issue is then made of the right of the party to intervene, to be determined by the court. *Atlantic Refining Co. v. Port Lobos Petroleum Corp.*, 280 Fed. 934. However, if the intervener has such an imperative right, resting on grounds of necessity and the inability of the party to obtain relief by other means, that the right to intervene cannot be said to be dependent upon judicial discretion, then leave of court is not required. *Minot v. Mastin*, 37 C. C. A. 234 (95 Fed. 734). This rule is

followed in state courts where the statute gives the intervener an absolute right to file his petition and become a party to the suit. Under the Nebraska statute, which is similar to that of Iowa, it is held that leave of court to file petition of intervention is not necessary. In *State ex rel. Bugbee v. Holmes,* 60 Neb. 39, it is said:

"The court has no authority to exclude from the case an intervener whose pleading discloses a direct interest in the matter of litigation; it must give judgment on the merits; it must decide in his favor or against him; and if against him, it must accord him the rights which belong to any other unsuccessful suitor."

See, also, *Spalding v. Murphy,* 63 Neb. 401; *In re Estate of Keller,* 101 Neb. 115.

We adopt this view, under the language of the Iowa statute, and hold that leave of court to the filing of a petition of intervention is unnecessary, and was neither contemplated nor intended, under the provisions of our law.

The question of notice involves a greater difficulty. In the absence of an express requirement that notice of the intervener's petition shall be served on the original parties to the suit, does the reasonable inference of the language of the statute require it? The answer to this question must be made in the light of the history of intervention in this state relative to the requirement of notice. By the Revision of 1860, notice of petition of intervention was expressly required. Section 2932 is as follows:

"The intervention shall be by petition *filed in the court in which the action is pending,* and it must set forth the facts *constituting the grounds* on which the intervention rests, *and shall be taken notice of by the adverse party, as any other pleading, on being served by copy, and shall be responded to in the time which is allowed for other pleadings of the kind used in such response,* and all the pleadings therein shall be governed by the same principles and rules as obtain in other pleadings provided for in this chapter. But if such petition is filed during term, the court shall direct the time in which an answer shall be filed thereto."

The report of the code commission submitted in 1872 made no change in the above section; but in the act which the com-

mission submitted to the general assembly as Part 3, Title XVII, Chapter 8, the section (No. 61) was amended by omitting the portions italicized above, and by a slight but immaterial change in the language of the portion retained. The section was made to read:

"The intervention shall be by petition, which must set forth the facts on which the intervention rests, and all the pleadings therein shall be governed by the same principles and rules as obtain in other pleadings provided for in this chapter. But if such petition is filed during term, the court shall direct the time in which an answer shall be filed thereto." Files of Public Archives, Division of History, Department of Iowa.

The act was passed by the general assembly as House File 17, without further amendment or comment with respect to the above section. Senate and House Journals, Fourteenth Adjourned Session 1873. The section became Section 2685 of the Code of 1873, and without substantial change the provision has been re-enacted in every revision down to the present time.

We find, therefore, that, under the present statute, no notice of the petition of intervention is expressly required. In this state, intervention is a creature of statute; and consequently a cogent reason must be found upon which to predicate the requirement of notice by legislative intent, in the absence of an express provision. The statute gives to an intervener the right to file his petition, dependent only that it shall set forth the facts upon which his right to intervene is based. The petition having been filed, parties to the pending suit are chargeable with the duty of taking notice of the calendar and pleadings. *Dollister v. Pilkington*, 185 Iowa 815. Furthermore, the statute provides that, if such petition is filed during term, then the court directs the time in which an answer shall be filed. This leaves a strong inference that the petition of intervention, if filed in vacation, shall be governed as other pleadings. The adverse parties are already within the jurisdiction of the court, and the intervener comes in by the filing of a petition, which is subject to motion, demurrer, or answer, like all other pleadings. We cannot escape the conclusion that the legislature, in amending the original statute by striking therefrom a requirement of notice, intended that no notice should be required.

Lastly, it is contended by appellee that the failure of the intervener to secure an order fixing the time in which the original parties should file an answer to intervener's petition was fatal to his standing as an intervener. The purpose of the provision heretofore quoted is apparent. It is to prevent the original parties from being taken by surprise, and that they may be afforded a reasonable time to prepare defenses thereto. The instant record shows that, although the intervener's petition was filed during term time, the case was not tried for several terms thereafter. It is further shown that the intervener's amended petition was, in effect, an original and complete petition, and was filed in vacation. This removed any objection to the failure of the court to direct a time in which the parties should file answers. We hold that the petitioner was properly in court.

2. PARTIES: intervention: failure to fix time for answer.

II. We now pass to a consideration of the second controlling issue on this appeal. Is the intervener in a position to claim a beneficial interest in the bond filed in the replevin action? This is a question of statutory interpretation.

When a plaintiff in replevin desires immediate delivery of the property, he must execute a bond to the defendant, with approved sureties, conditioned that he will appear at the next term of court, if in a court of record, and prosecute his action to judgment, and return the property, if a return is awarded, and pay all costs and damages that may be adjudged against him. Section 12181, Code of 1924. It is further provided that said bond shall be filed with the clerk, and "be for the use of any person injured by the proceeding." Section 12182. Is the instant intervener an injured person, within the contemplation of the statute?

3. REPLEVIN: bond: intervener as injured party.

There are two classes of rights which the law accords to persons generally. These may be termed (1) substantive, and (2) remedial. The former includes those rights which one enjoys, under the legal system, prior to the disturbance of normal relations; the latter includes those rights by which a person may resort to the machinery of justice, either to secure amends for a disturbance of his substantive rights or to prevent a threatened disturbance. A person may be injured, therefore, by

a proceeding which disturbs either his substantive or his remedial rights. With this thought in mind, we inquire whether the intervener is within the purview of either class.

The intervener came into the replevin suit voluntarily. The bond filed by the plaintiff does not expressly include him within its terms. Is he within the terms of the statute? In legal contemplation, the statute enters into and forms a part of a replevin bond, and the parties are conclusively presumed to intend what the statute provides. The language is that the bond shall be "for the use of any person injured by the proceeding." Was the intervener injured by the proceeding in the replevin suit brought by Harry McFarlan against William J. Novotny and L. S. Morrison? It is obvious that he was not deprived of any remedy by a delivery of the automobile to plaintiff. Under the common law, property taken and held by an officer under a writ of replevin was *in custodia legis*, and not subject to an action of replevin by a third party asserting a claim to it. *White v. Dolliver*, 113 Mass. 400. A different rule prevails in Iowa. *Davis v. Gambert*, 57 Iowa 239. The same remedies, including replevin, were open to the intervener against the plaintiff as existed in his favor against the defendants. When he voluntarily availed himself of his right of intervention, he merely elected a remedy, among those that were open to him. From the procedural viewpoint, having suffered no injury he is not included within the terms of the bond and the statute. Was he injured with respect to his substantive rights? He was not a stranger to the proceeding. The record discloses that he stood in privity with the defendant William J. Novotny. The relation of principal and agent had been established. It was the duty of the agent to do whatever was in his power, to regain possession of the property and hold the same for his principal. This duty was attempted to be performed by the agent, and it was shortly thereafter that the plaintiff McFarlan entered his appearance. True, the agent had no property or possessory right, as against the principal; but he was deprived of the possession of the car in the replevin action, and the intervener was deprived of the right of regaining possession from his agent. The record is clear that the defendant William J. Novotny at no time claimed

either the right of possession or property against his principal, Joseph J.

The statute provides that an intervener may join with the plaintiff or with the defendant, or take the position of an independent party. An intervener who joins with the defendant certainly does not repudiate a relation of privity which existed between himself and such defendant. By taking this position, the intervener intended to join with the defendant in an effort to protect his rights, and both parties were attempting to accomplish the same result, to wit: to regain possession of the principal's property. In his amended petition of intervention, he asked judgment against "the plaintiff Harry McFarlan and against the bonding company whose bond is filed in this cause of action." The pleadings do not disclose, nor does it appear, that he ever waived or intended to waive any benefit that might accrue to him by virtue of the privity of principal and agent. The intervener not having repudiated the agency, nor having waived any benefit that accrued to him under the bond, it does not lie in the mouth of the defending plaintiff or his bondsman to deprive him of any interest that he may derive thereby.

The decisions in *Christy v. Vest*, 36 Iowa 286, and *Edwards & Beardsley v. Cottrell & Babcock*, 43 Iowa 194, are not controlling; nor do they militate against the claim of the instant intervener.

In the case at bar, the undertaking filed was for the use of any person injured by the proceeding. This not only included the defendants in the action, but any person who is shown to be in privity with them at the time the judgment is rendered. This interpretation does not change or enlarge the liability of the surety. But one bond is contemplated for the return of property in one action, and that is for the benefit of any injured party to the action when the return is adjudged. The intervener was such a party.

Wherefore, the judgment entered must be, and is,— *Reversed.*

FAVILLE, C. J., and STEVENS and VERMILION, JJ., concur.